UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL E. HARKE,<br><br>    Plaintiff,<br><br>vs.<br><br>D. HOFFMAN; A. BEVIER; and CITY OF BOISE, IDAHO;<br><br>    Defendants. | Case No. 1:10-cv-00023-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendants' Motion for Summary Judgment. (Dkt. 36.) Plaintiff has filed his Response (Dkt. 39), and Defendants have filed a Reply. (Dkt. 41.) In addition, Plaintiff has filed a Motion to Compel (Dkt. 35), and Defendants have filed a Motion to Strike (Dkt. 42). All of the motions are ripe for adjudication.

Having fully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, in the interest of avoiding further delay, the Court shall decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

# BACKGROUND

1. **Factual Background**

Shortly before his arrest, Plaintiff joined Gold's Gym, giving the gym a series of post-dated checks for the membership fees. However, the gym deposited all of the checks at once, causing them to bounce, and causing Plaintiff to lose his checking account. Plaintiff also was unable to obtain a driver's license because his court file was lost for a time. (Plaintiff's Depo., Dkt. 36-5, p. 8.) For these two reasons, he was unable to obtain another checking account.

Plaintiff obtained a social security disability settlement check for approximately $20,000. Because he had no checking account, and the bank would not allow him to be added as a signatory to the checking account of his fiancee, Sandra Jeffers, Plaintiff deposited the check into Jeffers' sole checking account. (*Id*., p. 8.) Jeffers was the sole signatory to that account, but Plaintiff alleges that they had an agreement that the money belonged to Plaintiff. Jeffers' statements to police indicated that she believed the money belonged to Plaintiff.

However, prior to Plaintiff's arrest, *both* Plaintiff and Jeffers wrote and signed checks against the money in Jeffers' account. (*Id*., p. 7, 9.) There was no prohibition that Jeffers not use the money in the account, and Plaintiff knew that he was Jeffers' sole source of support. Plaintiff planned to use a portion of the money to buy a house with his mother, and Plaintiff and Jeffers also used the money to buy a gun, to retrieve Jeffers' items from a pawn shop, to go on a vacation to visit Jeffers' relatives, and to pay for

**MEMORANDUM DECISION AND ORDER - 2**

household bills. (*Id*., pp. 16-17.)

On May 6, 2008, Plaintiff and his fiancee were having relationship difficulties that became public, when Boise City police officers dispatched to their residence for a "physical domestic" incident. (Officer Dave Hofmann Affidavit, Exhibit 1, Police Narrative Report Supplement, Dkt. 36-2, p. 6.) Jeffers had fled the residence for refuge at the neighbors' house. (*Id*.) Several days earlier, Plaintiff, a five-time-convicted felon, had given Jeffers money to buy a 12-gauge shotgun at a pawn shop. (*Id*.) Jeffers had hidden the gun in the garage, allegedly because of ongoing relationship problems. (Hofmann Aff., Dkt. 36-2, Exhibit 3, Sound Recording, Dkt. 37.)

The evening the police were called, Plaintiff had called Jeffers on her cell phone at the neighbors' and left a message, saying, "You have 30 seconds to tell me where the shotgun is or I'm calling the Mafia, and you're dead." (*Id*.) The neighbor, Cory Carrol, went outside and heard Plaintiff yelling, "Where's my shotgun?" (Hoffman Aff., ¶ 12.) Plaintiff also told Officer Dennis Tolan that the gun was his, and he was fearful Jeffers had stolen it. (Dennis Tolman Affidavit, Dkt. 36-3.)

Plaintiff was arrested, and then Defendant Officer Hoffman accompanied Jeffers back to the residence. Jeffers found a broken plate, which had damaged the floor, and a knife stab to the drywall. Her estimate of the damage was about $200 to $300. She also relayed to Officer Hoffman details of the incident leading to Plaintiff's arrest, as well as past incidents of domestic abuse and conveyed her fear that Plaintiff might kill her. (Hofmann Aff., Dkt. 36-2, Exhibit 3, Sound Recording, Dkt. 37.)

**MEMORANDUM DECISION AND ORDER - 3**

Jeffers spoke with Officer Hoffman about Plaintiff bonding out of jail, the parties' money situation, and paying for the damage Plaintiff had caused to the rental house, as captured on the sound recordings submitted as part of the record in this case:

> Jeffers: It's his social security card. . . it's his social security, but I don't want him bailing himself out; it's all in my account. . . I'll give him his money back, he can have his money, but I don't want him to have access to his money to get out.
>
> Officer: He won't be able to get out tonight.
>
> Jeffers: Do I have the right to keep his money to pay for all the damage here?
>
> Officer: What's the money situation?
>
> Jeffers: He got a disability of $20,000 and he put it in my account.
>
> Officer: He put it in your account? - hey, if he put in your account, right? I would say. ... So, what was the point of him putting the money in your account? . . . to help pay bills? Was it to help pay bills? [speaking over Jeffers].
>
> Jeffers: Yes.
>
> Officer: K, well, I would say he can throw a fit all he wants and tell him to sue you, it's not theft.

(Hofmann Aff., Dkt. 36-2, Exhibit 3, Sound Recording, Dkt. 37.)

Plaintiff alleged in his Complaint that Detective Angie Bevier similarly advised Jeffers. However, Plaintiff has since corrected his allegations and states that Bevier did not tell Jeffers that Plaintiff's money in Jeffers' account was "fair game," but that the audiorecording shows only that Jeffers related to Bevier that *Officer Hoffman* told Jeffers the money was fair game. (Dkt. 39, p. 3.)

**MEMORANDUM DECISION AND ORDER - 4**

As a result of the incidents on May 6, 2008, Plaintiff was charged with felon in possession of a firearm, misdemeanor domestic battery, misdemeanor malicious injury to property, and misdemeanor possession of drug paraphernalia. (Muir Aff., Dkt. 36-5, Exhibit 9, Sound Recording, Dkt. 37.) At the time of the arrest, Plaintiff and Jeffers lived in a leased house, and both of them had signed their names on the contract of the rental house. (Plaintiff's Depo., Dkt. 36-5, p. 8.) All of the utilities were in Plaintiff's name. Plaintiff's only source of income was college grants and social security disability income. (*Id.*, p. 10.) Jeffers depended on Plaintiff for support, and Plaintiff provided her with support. (*Id.*, p. 7, 10.)

Plaintiff's mother, Merrie Neely, said that, after Plaintiff's arrest, Jeffers paid Plaintiff's mother, $5,000, and Jeffers had $4,000 left of the social security disability funds in her checking account. (Plaintiff's Exhibits, Dkt. 39, Sound Recording, "HARKE - Int Merrie Neely 2.wav.") Neely met with Jeffers at the rental house. Neely stated that, in addition to minor knife gouges in the wall that needed to be repaired with spackle, a sliding glass door was broken, and so Neely authorized Jeffers to "take $1,000 of the money and fix the house up." (*Id.*) Later, Neely noted that the repairs had not been completed, and Jeffers told Neely that she had spent the remaining money, but intended to repay it with her economic stimulus payment. Later, Jeffers left town without paying for the damage, without reimbursing Plaintiff, and without leaving a forwarding address. (*Id.*)

Before Jeffers left town, Detective Bevier interviewed her about the alleged domestic violence that had occurred in their relationship, as well as the incident leading to

**MEMORANDUM DECISION AND ORDER - 5**

the current charges against Plaintiff. Detective Bevier also checked Plaintiff's background, which included domestic violence, weapons, and assault charges, as well as a total of five prior felonies. Detective Bevier forwarded the information to prosecutors. (Angie Bevier Affidavit, Dkt. 36-4, ¶¶ 3, 5, 16.)

Officer Hofmann asked Detective Bevier to assist in recommending to the prosecutor a large bond for the release of Plaintiff because Jeffers was fearful for her safety if Plaintiff were to be released from jail after she received the threatening phone call. (Hofmann Aff., Dkt. 36-2, ¶ 18.) Detective Bevier said to Jeffers in a recorded telephone interview that she intended to recommend that prosecutors obtain the highest bond possible, given the circumstances. (*Id.*, Dkt. 36-4, Exhibit 6, Sound Recording, Dkt. 37.)

At the arraignment, Prosecutors recommended a bond of $1 million, while defense counsel recommended no more than $10,000. (Muir Aff., Dkt. 36-5, ¶ 3, Exhibit 8, Sound Recording, Dkt. 37.) Based on the criminal record recited into the record and the circumstances of the current charges, the arraigning magistrate court set the bond at $150,000. (*Id.*) At the bond hearing, defense counsel requested that the bond be reduced to $50,000, but the prosecutor argued it should remain at $150,000. (*Id.*, Ex. 9, Sound Recording of Video Hearing.) The state district court declined to reduce the bond, and it remained at $150,000. (*Id.*)

2. **Legal Background**

Plaintiff's claims arise from what he deems unreasonable police interference with

MEMORANDUM DECISION AND ORDER - 6

Jeffers' use of Plaintiff's remaining funds in Jeffers' checking account and their recommendations to prosecutors about the amount of the bond.

After an initial review of the Complaint by the Court, Plaintiff was permitted to proceed on the following claims against Defendants Officer Hoffman and Officer Bevier: (1) a Fourth Amendment claim for seizure of his personal property; (2) a Fourteenth Amendment claim for deprivation of his personal property without due process of the law; (3) a Fourteenth Amendment substantive due process claim for inability to make bail as a result of Defendants' interference; and (4) an Eighth Amendment excessive bail claim. (Dkt. 6.)

## PRELIMINARY MOTIONS

**1.     Plaintiff's Motion to Compel Discovery**

In Plaintiff's Motion to Compel Discovery (Dkt. 35), Plaintiff argues that Defendants refused to respond to a set of Requests for Admissions because the Requests had been sent out too late to be answered within the discovery cut-off period.

The first discovery deadline was April 29, 2011, specifically stating that discovery must be sent out in time for the responses to be due prior to the deadline. (Dkt. 18.) At Plaintiff's request, the discovery deadline was extended to June 3, 2011. (Dkt. 26.) Again, at Plaintiff's request, the deadline was extended to August 1, 2011. (Dkt. 31.)

Plaintiff sent out his Requests for Admission on July 28, 2011, just several days before the discovery completion deadline. Plaintiff argues that the lateness of his discovery requests should be excused because he was incarcerated until July 8, 2011, and

**MEMORANDUM DECISION AND ORDER - 7**

because his litigation strategy was that he would wait to see what Defendants did in discovery before conducting his own. These are not adequate reasons to delay sending his discovery to Defendants.

Further, Plaintiff's reliance on a prison litigation manual that does not set forth deadlines for admissions or discovery is disingenuous, as Plaintiff himself acknowledged that, in this case, there was, in fact, a discovery completion deadline, and he requested and obtained an extension of the discovery deadline twice. Because no good cause exists for Plaintiff's dilatory discovery requests, his Motion will be denied.

## 2. Defendants' Motion to Strike

Defendants move to strike several of Plaintiff's exhibits (Dkt. 42, 39). Plaintiff has submitted a written hearsay statement made by non-party declarants contained in a note from Tessie Buttram, an Ada County Prosecutor's Office Investigator Report, and an audio-recorded hearsay statement of Merrie Neely, who is Plaintiff's mother.

Defendants have submitted similar documents and audio-recorded statements that are hearsay, but they are accompanied by an attorney's affidavit to support their authenticity. Defendants contend that Plaintiff's documents are not supported by an affidavit and cannot be considered on summary judgment.

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed.R.Civ.P. 56(c). However, in determining admissibility for summary judgment

**MEMORANDUM DECISION AND ORDER - 8**

purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

Here, the Court declines to strike the exhibits, because Plaintiff is pro se, and he likely could obtain the proper affidavits to support the evidence under Rule 56(e), if given an opportunity to do so. As a result, the Motion to Strike will be denied.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 1. Standard of Law Governing Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v.*

**MEMORANDUM DECISION AND ORDER - 9**

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The requirement is that there be no genuine dispute as to any *material* fact. "Material facts are those that may affect the outcome of the case." *See id.* at 248. The moving party is entitled to summary judgment if that party shows that each material issue of fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record.' Fed. R. Civ. P. 56(c)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Rule 56(e)(3)

**MEMORANDUM DECISION AND ORDER - 10**

authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it."

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To have a claim under § 1983, a plaintiff must show the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).[1] Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

### 1. Fourth and Fourteenth Amendment Claims Based on Seizure or Deprivation of Private Property

Plaintiff alleges that Officer Hoffman violated Plaintiff's Fourth and Fourteenth Amendment rights when he provided advice to Jeffers that she could use Plaintiff's social security disability settlement funds, located in Jeffers' account, for payment of bills and damage Plaintiff had inflicted upon their jointly-leased house. The preliminary question

---

[1] 42 U.S.C. § 1983, provides, in pertinent part, as follows:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

**MEMORANDUM DECISION AND ORDER - 11**

underlying these constitutional claims is whether state actors assisted in the alleged deprivation to the degree that the private deprivation amounted to state action. For the sake of argument, the Court assumes without deciding that Jeffers' use of Plaintiff's money that had been deposited in Jeffers' sole checking account could constitute an illegal seizure or deprivation of Plaintiff's personal property.

In *Blum v. Yaretsky*, 457 U.S. 991 (1982) the United States Supreme Court explained the kind of involvement needed in order for private actions to be deemed state actions:

> Although the factual setting of each case will be significant, our precedents indicate that a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment.

*Id*. at 1004-05 (internal citations omitted).

The undisputed facts are as follows. In Plaintiff's case, Defendant Hofmann responded to a call. He did not know Sandra Jeffers. He provided advice about abusive relationships and answered her questions. Defendant Hofmann was not involved in taking or using Plaintiff's money, nor did he take any affirmative steps to aid Jeffers in taking or using Plaintiff's money. There is no evidence of an agreement or plan between Hofmann and Jeffers to take Plaintiff's money. Hofmann simply gave advice on Jeffers' potential use of the money in response to her question, and Plaintiff's argument that it was "legal" advice does not change the fact that it was an opinion, rather than a significant action

**MEMORANDUM DECISION AND ORDER - 12**

toward a seizure or deprivation of Plaintiff's property.

Plaintiff argues that, in the recorded version of the interview, Officer Hoffman was leading Jeffers, coercing her to answer in a particular way, not allowing her to answer the question he asked before he cut her off, and asking the same question again. Plaintiff speculates what this exchange might mean other than what the plain words reflect. While the meaning of this conversation is disputed, the dispute is not material, because, even if the words mean that Officer Hoffman's advice to Jeffers was that she could use the money in her account for purposes other than paying bills, as discussed below, that still does not mean that mere expression of his opinion rises to the level of significant encouragement, as shown below.[2] Plaintiff has submitted no evidence of any "conspiracy" or "agreement" between Officer Hofmann and Jeffers to support his claim.

Plaintiff has pointed to no case (of precedent or otherwise) in which the act of merely giving advice on a potential private seizure was considered encouragement significant enough to constitute state action, and, in its own research, this Court has found none. Rather, officers were found to be significantly involved in private seizures only when they took affirmative actions to assist in the private seizures.

For example, in *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983), the

---

[2] Much of Plaintiff's argument is aimed at what Jeffers knew and what Jeffers had planned but did not articulate to Officer Hoffman; however, that is irrelevant to whether Officer Hoffman's actions constituted significant encouragement, because there is nothing in the record showing that Hoffman knew what Jeffers was allegedly thinking or planning. That Plaintiff may have a state-law civil cause of action against Jeffers alone for return of the funds is not relevant to this civil rights case against Officer Hofmann.

**MEMORANDUM DECISION AND ORDER - 13**

plaintiffs/evictees argued that police facilitated a private seizure of their property, and the court agreed. Particularly, the landlords "repeatedly requested aid by the police to effect the eviction, and the police intervened at every step." *Id.* at 35.

In *Harris v. City of Roseburg*, 664 F.2d 1121 (9th Cir. 1981), a police officer did more than just "stand by in case of trouble" during a repossession of a semi-tractor. The officer told the debtor "to stand back and get away," the officer stood between the debtor and the semi-tractor, and the officer told the debtor that if he "interfered either any further or in any way that [he] was going straight to jail." *Id.* at 1124, 1127. This affirmative action was enough to defeat the officer's motion for summary judgment. *Id.* at 1127.

In *Menchaca v. Chrysler Credit Corporation*, 613 F.2d 507 (5th Cir. 1980), police officers responded to a repossession in progress, where the debtor was using loud and abusive language toward the repossessors. The officers were not involved in the repossession, and there was no evidence of cooperation or a pre-arranged plan between the repossessors and police. The officers merely informed the debtor that if he continued to use loud and abusive language, he could be arrested for a breach of the peace. *Id.* at 510. The court determined that dismissal of the claim was appropriate, because no state action occurred.

The Court concludes that, based on the law and the undisputed material facts, Officer Hoffman's advice to Jeffers does not amount to significant state action.[3] "Mere

---

[3] In addition, as noted above, Plaintiff has conceded that Officer Bevier gave no such advice.

**MEMORANDUM DECISION AND ORDER - 14**

approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Blum v. Yaretsky*, 457 U.S. at 1004-05. Because of the insignificant involvement of the state actor in the private action alleged, Plaintiff's facts fail under any of the tests set forth by the United States Supreme Court to raise a genuine dispute as to whether there was significant government involvement in Jeffers' private action such that it would constitute state action or that Plaintiff could maintain a civil rights lawsuit revolving around private action. *See Jackson v. Metropolitan Edson Co.*, 419 U.S. 345 (1974) (governmental nexus test); *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922 (1982) (joint action test); *Marsh v. Alabama*, 326 U.S. 501 (1946) (public function test); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (state compulsion test).

Accordingly, the Court will grant Defendants' Motion for Summary Judgment on the Fourth and Fourteenth Amendment claims regarding government actors participating in a private seizure.

2.  **Fourteenth and Eighth Amendment Claims Based on Excessive Bond Recommendation**

Plaintiff also brings a claim that his substantive due process rights were violated because officers conspired to keep him in jail prior to trial by requesting an excessively high bail amount without a legitimate government interest. A substantive due process violation is one that "shocks the conscience." It occurs in a situation in which "the government's action is clearly arbitrary and unreasonable, having no substantial relation

to the public health, safety, morals or general welfare." *Sinaloa Lake Owners Assoc. v.City of Simi Valley*, 864 F.2d 1475, 1484 (9th Cir. 1989) (plaintiff allowed to proceed where the complaint "paint[ed] a picture of government officials bent on destroying the dam for no legitimate reason.").[4]

Pretrial detainees, who have not been found guilty of a crime, have a Fourteenth Amendment substantive due process right against restrictions that amount to punishment. *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"). The *Bell* analysis requires a court to ask whether there was an express intent to punish, or "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id*. at

---

[4] The Eighth Amendment provides for the right to be free from excessive bail. While the United States Supreme Court has never addressed whether the Excessive Bail Clause of the Eighth Amendment has been incorporated into the Fourteenth Amendment against the states, the Ninth Circuit has decided to "follow the Supreme Court in 'assum[ing]' without deciding that the Clause is incorporated against the States." *Galen v. County of Los Angeles*, 477 F.3d 652 (9th Cir. 2007) (relying on *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A cognizable Eighth Amendment claim arises when a law enforcement officer prevents a plaintiff "from obtaining bail after an amount was set, resulting in a practical denial of his right to bail." *See, e.g., Piskanin v. Hammer*, 2005 WL 3071760, at *13 (D. Pa. 2005).

The courts have made it clear that, although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees, *Bell v. Wolfish*, 441 U.S. at 537 n.16, the standard under either constitutional provision is the same. *See Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010). Accordingly, here, this Court will address the excessive bail claim under the Fourteenth Amendment only.

**MEMORANDUM DECISION AND ORDER - 16**

538.

Officer Hofmann admits that he asked Detective Bevier to assist in recommending to the prosecutor a large bond for the release of Plaintiff because Jeffers was fearful for her safety if Plaintiff were to be released from jail after she received the threatening phone call. (Hofmann Aff., Dkt. 36-2, ¶ 18.) It is undisputed that Officer Bevier told Jeffers that she would recommend that the prosecutor set the bail "as high as possible." (Bevier Aff., Dkt. 36-4, Exhibit 4, Sound Recording, Dkt. 37.) The prosecutor initially sought a bond of $1 million, while defense counsel requested a $10,000 bond. The bond was set at $150,000, and, when it was revisited 6 months later, the trial court elected to leave the bond at that amount. (Muir Aff., Dkt. 36-5, Ex. 8-9, Dkt. 37.)

Idaho Code § 19-2904 provides for the purposes supporting bonds. Appropriate considerations include protection of the victims and witnesses; public safety concerns; the integrity of the court process, including the right of the defendant to bail as constitutionally provided; and ensuring the appearance of the defendant. *Id*.

Here, the record is replete with facts showing that law enforcement officers communicated their legitimate concerns about Plaintiff to prosecutors. Jeffers had alleged numerous instances of verbal, emotional, and physical abuse. Jeffers told Officer Bevier that Plaintiff had strangled, smothered, and slapped her a couple of months ago, and that, on the night Plaintiff was arrested, he had pushed her into a corner by chest-bumping her, and that she finally ran to the neighbors' house for help, fearing for her life. (Bevier Aff., Dkt. 36-4, Exhibit 4, Sound Recording, Dkt. 37.) Officer Hoffman's interview with

**MEMORANDUM DECISION AND ORDER - 17**

Jeffers includes Plaintiff's telephone message to Jeffers in Plaintiff's own voice, stating, "You have 30 seconds to tell me where the shotgun is or I'm calling the Mafia, and you're dead." (Hofmann Aff., Dkt. 36-2, Exhibit 3, Sound Recording, Dkt. 37.) Plaintiff admits that he has five prior felonies (which include intimidation of a witness and assault with a deadly weapon). (Muir Aff., ¶ 2, Exhibit 7; Harke Depo, pp. 17, 22, 46.)

Plaintiff disputes the veracity of Jeffers' allegations to police officers. This does not create a genuine dispute as to a material fact, because Plaintiff has not brought forward any evidence showing that Defendants knew at the time of the allegations that the allegations were untrue; moreover, Plaintiff had full opportunity to rebut those items at the bond reduction hearing. Plaintiff was unable to come forward with sufficient evidence at that time to show that the bond should be reduced. Both the magistrate and the district judge agreed that a bond of $150,000 was appropriate. (Muir Aff., Dkt. 36-5, Exhibit 9, Sound Recording, Dkt. 37.)

Nothing in the record shows that Defendants conspired with each other or with the prosecution to keep Plaintiff jailed for arbitrary or capricious reasons. Rather, Defendants had legitimate reasons to recommend a high bond for Plaintiff that was rationally connected to the charges, and that was not excessive in light of Plaintiff's verbal threat to kill Plaintiff and Plaintiff's criminal history. Simply because Plaintiff has found several bail bondsmen to opine that the prosecutor chose a recommendation that was too high ($1 million) compared to other similar cases, does not mean there is a genuine dispute of material fact, where Plaintiff had adequate due process to contest the grounds for and the

**MEMORANDUM DECISION AND ORDER - 18**

amount of the bond, and, yet, it remained the same after a full hearing. Consequently, this claim is subject to summary judgment.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 36) is GRANTED. Plaintiff's claims are DISMISSED with prejudice.

2. Plaintiff's Motion to Compel (Dkt. 35) is DENIED.

3. Defendants' Motion to Strike (Dkt. 42) is DENIED.

DATED: **March 13, 2012**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 19**